FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 05, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CANDICE V., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 1:17-CV-03182-JTR <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 14, 19. Attorney Chad Hatfield represents Candice V. (Plaintiff); Special Assistant United States Attorney Jeffrey E. Staples represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 3. After reviewing the administrative record and briefs filed by the parties, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.

**JURISDICTION**

Plaintiff filed an application for Disability Insurance Benefits (DIB) on July 8, 2014, Tr. 72-73, alleging disability since July 30, 2013, Tr. 141, due to a torn rotator cuff which required screws, a compressed lumbar spine, and left hip strain with IT band syndrome, Tr. 158. The application was denied initially and upon reconsideration. Tr. 87-93, 95-99. Administrative Law Judge (ALJ) Irene Sloan

ORDER GRANTING DEFENDANT'S MOTION - 1

held a hearing on January 27, 2016 and heard testimony from Plaintiff and vocational expert Mark Harrington. Tr. 36-65. The ALJ issued an unfavorable decision on July 12, 2016. Tr. 20-31. The Appeals Council denied review on August 27, 2017. Tr. 1-5. The ALJ's July 12, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff initiated this action for judicial review on October 19, 2017. ECF Nos. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 27 years old at the alleged date of onset. Tr. 141. Plaintiff completed high school in 2004 and reported that she attended special education classes. Tr. 159. Her reported work history includes the jobs of assistant manager, cashier, housekeeper, receiving supervisor, table busser, and fast food worker. Tr. 160, 167. When applying for benefits Plaintiff reported that she stopped working on July 30, 2013 because of her conditions. Tr. 158.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402

U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 404.1520(a). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs which are available in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 404.1520(a)(4)(v).

## ADMINISTRATIVE DECISION

On July 12, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from July 30, 2013 through the date last insured, September 30, 2015.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from July 30, 2013 through September 30, 2015. Tr. 22.

At step two, the ALJ determined that Plaintiff had the following severe impairments through the date last insured: slight cervical spine disc bulging at the C5-C6 and C6-C7 levels with no nerve root impingement; status-post right shoulder arthroscopy, labral repair, and acromioplasty; right shoulder bursitis and tendinitis; shoulder impingement syndrome; and rotator cuff syndrome. Tr. 22.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments through the date last insured. Tr. 23.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform a range of light work with the following limitations through the date last insured:

> [T]he claimant was limited to occasional overhead reaching with the right upper extremity. She could never climb ladders, ropes, or scaffolds, but she was able to climb ramps and stairs on an unlimited basis. She could also unlimitedly balance, stoop, kneel, crouch, and occasionally crawl. The claimant should avoid concentrated exposure to hazards.

Tr. 24. The ALJ identified Plaintiff's past relevant work as lubrication servicer and retail sales clerk and found that she could not perform this past relevant work through the date last insured. Tr. 29.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform through the date last insured, including the jobs of cashier, cleaner/housekeeper, and office helper. Tr. 30. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from July 30, 2013, through the date last insured, September 30,

2015. Tr. 31.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly consider Plaintiff's headaches at step two, (2) failing to properly consider the opinion of Brady Moss, ARNP, (3) failing to properly consider Plaintiff's symptom statements, and (4) failing to meet the step five burden.

**DISCUSSION**[1]

**1. Step Two**

Plaintiff challenges the ALJ's step two determination by asserting that her headaches were a severe impairment. ECF No. 14 at 11.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 404.1522(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

---

[1] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

1996) (internal quotation marks omitted).

Plaintiff argues that the ALJ failed to acknowledge her headaches as severe at step two and failed to provide any explanation as to why. ECF No. 14 at 11. In her decision, the ALJ addressed Plaintiff's headaches as a symptom of her neck impairment and found that the bulging disc in her cervical spine at C5-C6 and C6-C7 was a severe impairment at step two. Tr. 22-23. Just because the ALJ did not find Plaintiff's headaches as a severe impairment separate from the other impairments does not mean that the headaches were ignored or not accounted for in the residual functional capacity determination. *See* S.S.R. 96-8p ("The [residual functional capacity] assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms," and "In assessing [the residual functional capacity], the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'")

Whether Plaintiff's headaches were a separate impairment or a symptom of her neck impairment is not material at step two because the ALJ would have included limitations from the headaches in the residual functional capacity determination. Therefore, if there was any error at step two in regards to Plaintiff's headaches, it would have been harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

**2.      Brady Moss, ARNP**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by treating nurse practitioner, Brady Moss, ARNP. ECF No. 14 at 12-15.

Nurse Moss provided three opinions regarding Plaintiff's functional abilities. Tr. 827, 850-52, 1308-10. Plaintiff challenges the ALJ's treatment of the third

opinion completed in December of 2014. ECF No. 14 at 12-13 (citing Tr. 1309). In that opinion, Nurse Moss placed check marks next to both Sedentary work and Severity limited, Tr. 1309, which the ALJ interpreted as limited to "sedentary exertional level with severe limitations (lifting no more than two pounds) with the right upper extremity," Tr. 28. Nurse Moss also precluded Plaintiff from handling or reaching with her right upper extremity. Tr. 1309. He stated that Plaintiff's medications caused increased fatigue and that work on a regular and continuous basis would cause her condition to deteriorate. Tr. 1308-09. He opined that Plaintiff's limitations had existed since the motor vehicle accident in December of 2012. Tr. 1310.

The ALJ gave this opinion little weight for three reasons: (1) it was inconsistent with the findings and opinion of Dr. Roesler; (2) it was inconsistent with Nurse Moss's contemporaneous treatment notes; and (3) it was inconsistent with the arthroscopic surgery completed just a few months prior. Tr. 28.

Plaintiff argues that the ALJ was required to provide clear and convincing reasons for rejecting Nurse Moss' opinion because he was a treating provider. ECF No. 14 at 14-15. Defendant argues that Nurse Moss' status as a nurse practitioner precludes him from being considered an acceptable medical source; therefore, his opinion can be rejected by providing "germane" reasons. ECF No. 19 at 7.

At the time of the ALJ's decision, a nurse practitioner was not an acceptable medical source, 20 C.F.R. § 404.1513(a) (2016), but was considered an "other source," 20 C.F.R. § 404.1513(d)(1) (2016). An ALJ may discount the opinion of an "other source," if she provides "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The Ninth Circuit has criticized applying this lesser standard to nurse practitioners, stating "regulations provide an out-dated view that consider a nurse practitioner as an 'other source.'" *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (citing *Molina*, 674 F.3d at

1111). On March 27, 2017, the regulations were amended to reflect this view and included nurse practitioners in the list of providers considered acceptable medical sources. 20 C.F.R. § 404.1502(a). However, this change only applies to cases filed with the Social Security Administration on or after March 27, 2017. 20 C.F.R. § 404.1502(a)(7). This case was filed on July 8, 2014. Tr. 72-73. Therefore, this Court is required to apply the "out-dated view" and treat the opinion of Nurse Moss as an "other source." *Popa*, 872 F.3d at 907.

All three of the ALJ's reasons for rejecting the opinion of Nurse Moss deal with the opinion's inconsistency with the medical evidence. Inconsistency with the medical evidence meets the germane standard. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Therefore, so long as the ALJ's reasons are supported by substantial evidence, they are sufficient to support her determination.

First, the ALJ found that Nurse Moss' opinion was inconsistent with the findings and opinion of Dr. Roesler, Plaintiff's treating orthopedic surgeon, from the same month. Tr. 28. On December 2, 2014, Dr. Roesler examined Plaintiff. Tr. 1202-03, 1288. He stated that she had failed to follow up with the physical therapy referral, she had asked him to complete forms for her disability claim, and she had been calling a couple times a week for more narcotics. Tr. 1203. He reported that he had reviewed the CT arthrogram himself and it "looks good," *Id.*, and "[y]ou can still see the defect and the labrum does not look like it is completely healed, but nevertheless it is in place. There is no reason to think that it would not heal given enough time." Tr. 1288. He then stated that Plaintiff "needs to do the PT. I explained today that I do not think she is disabled according to [Social Security] criteria and she needs to do the PT and to go back to work." Tr. 1203. Because the ALJ's determination that Dr. Roesler's findings and statements were inconsistent with Nurse Moss' opinion, the ALJ's determination is supported by substantial evidence and meets the germane standard under *Bayliss*.

Second, the ALJ found that Nurse Moss' opinion was inconsistent with his

own treatment notes, which the ALJ said showed a full range of motion. Tr. 28. However, the physical evaluation on December 4, 2014 showed no abnormalities except for a limited range of motion in Plaintiff's right shoulder due to pain. Tr. 1265. Since the ALJ misstated the medical evidence regarding the range of motion testing, this reason was not supported by substantial evidence and cannot meet the germane standard. However, any resulting error would be considered harmless because the ALJ provided other legally sufficient reasons to reject the opinion. *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

The ALJ also relied upon a November of 2015 treatment note in asserting inconsistencies between Nurse Moss' opinion and his treatment notes. Tr. 28. In this treatment note, Plaintiff reported to Nurse Moss that she was "unable to lift, carry, push or pull any weight" with her right upper extremity. Tr. 1208. Nurse Moss acknowledged that on a previous incapacitation exam he had indicated she could lift up to ten pounds, and he asked Plaintiff to bring in a new form so he could adjust the physical capabilities on the report. *Id*. However, physical examination only revealed tenderness and a moderately reduced range of motion in Plaintiff's right shoulder. Tr. 1213. This treatment note demonstrates that there was limited objective medical evidence to support the level of impairment Plaintiff reported to Nurse Moss and the level of impairment Nurse Moss presented on the form Plaintiff provided to him. Thus, the ALJ's finding is supported by substantial evidence and meets the germane standard under *Bayliss*.

Third, the ALJ relied upon contemporaneous arthroscopic surgery which showed no abnormalities beyond inflammation of the bursa. Tr. 28. On August 12, 2015, Dr. Antoci completed a right shoulder diagnostic arthroscopy. Tr. 1064-66. The surgical report repeatedly stated that no tears were found. *Id*. Therefore, this also shows a lack of objective medical evidence to support the severe

limitations Nurse Moss opined and is supported by substantial evidence. Therefore, it meets the germane standard under *Bayliss*.

The ALJ provided three examples in which the medical evidence was inconsistent with the limitations opined by Nurse Moss in December of 2014. Plaintiff argues that the ALJ was required to provide an explanation as to exactly how this medical evidence was inconsistent with Nurse Moss' opinion. ECF No. 14 at 14. However, Plaintiff's argument advocates for applying the higher standards of clear and convincing or specific and legitimate, ECF No. 14 at 14-15, which generally require this level of explanation, *see Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings.); *see also Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct."). But such an explanation is not required when the germane standard applies as it does in this case. Therefore, the Court will not disturb the ALJ's treatment of this opinion.

### 3. Plaintiff's Symptom Statements

Plaintiff challenges the ALJ's determination that Plaintiff's symptom statements were unreliable. ECF No. 14 at 15-18.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the

claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms to be "not entirely consistent with the medical evidence and other evidence in the record." Tr. 24-25. Specifically, the ALJ found that (1) her alleged limitations were not supported by the objective medical evidence, (2) her alleged limitations were inconsistent with her reported activities, and (3) she received unemployment benefits during the relevant time period. Tr. 25-27.

### A. Medical Evidence

An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's symptom statements. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). But this cannot be the only reason provided by the ALJ. *See Lester*, 81 F.3d at 834 (ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence); *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (Although it cannot serve as the sole reason for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Here, the ALJ pointed to multiple locations in the record demonstrating that the objective medical evidence did not support Plaintiff's allegations. Tr. 25-26 (repeated relatively normal physical examinations, imaging, and exploratory arthroscopic surgery were inconsistent with her complaints of significant restrictions of her right upper extremity and normal nerve conduction study in June of 2015 was inconsistent with her reports of numbness in her fingers of the right hand). Therefore, this reason, when combined with the ALJ's other reasons, supports her determination and meets the specific, clear and convincing standard.

### B. Reported Activities

A claimant's daily activities may support an adverse credibility finding if (1)

the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

First, the ALJ found that Plaintiff's reports of independent self-care, preparing meals, performing household chores, shopping, and taking her children swimming was inconsistent with her alleged symptoms and limitations. Tr. 26. The Ninth Circuit has repeatedly found that the ability to perform these kinds of activities are not inconsistent with the inability to work:

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) *citing Smolen*, 80 F.3d at 1287 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted)); *Fair*, 885 F.2d at 603 ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). Therefore, the fact that Plaintiff performs such daily activities is not sufficient to meet the specific, clear and convincing

standard.

Second, the ALJ found that Plaintiff's reports of moving a grandfather clock and helping a friend lift a couch was inconsistent with her reported symptoms. Tr. 26. In October of 2013, Plaintiff was seen in the emergency room after moving a clock. Tr. 792, 797, 801. When examined, Plaintiff's right shoulder showed no deformity or swelling. Tr. 803. She did have diffuse tenderness and pain with range of motion. *Id*. Imaging showed no acute changes. *Id*. When asked about it at the hearing, she stated she was not moving the clock, but pushing it back into the wall. Tr. 53. On September 26, 2014, Plaintiff reported to the emergency room after helping a friend lift a couch and experiencing pain in her right shoulder and neck. Tr. 875, 880. An examination revealed tenderness in her right shoulder and an x-ray showed no acute changes. Tr. 883-84. When asked about it at the hearing, Plaintiff testified that it was a loveseat and she was only lifting with her left side. Tr. 54.

The ALJ concluded that the ability to engage in moving a clock and a loveseat was inconsistent with her reported limitations and that the fairly normal findings on examinations following these activities further undercut her allegations. Tr. 26. Plaintiff argues that this evidence is not inconsistent with her testimony as it demonstrates that an overexertion of her upper extremity resulted in increased symptoms. ECF No. 14 at 18. While this is a possible interpretation of the evidence, the ALJ's interpretation, that Plaintiff's repeated lifting of furniture was inconsistent with her alleged symptoms and limitations, is also possible. If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Therefore, the Court will not disturb the ALJ's judgment and finds this to be a specific, clear and convincing reason.

### C. Unemployment Benefits

The receipt of unemployment benefits can affect a person's claim for social

security benefits, however, there must be evidence to support that the claimant held herself out as ready, willing, and able to work full-time. *Carmickle*, 533 F.3d at 1161-62. To collect unemployment benefits under Washington law, an individual must be "able to work" and "available for work in any trade, occupation, profession, or business for which he or she is reasonably fitted." WASH. REV. CODE § 50.20.010(1)(c). The requirement to be available for full-time work does not apply under specific circumstances described in Washington Administrative Code § 192-170-050 (1)(b). WASH. ADMIN. CODE § 192-170-010. These circumstances apply when an applicant provides documentation from a physician that a disability limits her available hours or physical ability. WASH. ADMIN. CODE § 192-170-050. Nothing in the records provided by Washington State Employment Security Department shows Plaintiff submitted such documentation. Tr. 224-660. Plaintiff received unemployment benefits from August 24, 2013 through February 22, 2014. Tr. 231-32. Therefore, it appears Plaintiff was holding herself out as able and available for work full-time. As such, this meets the specific, clear and convincing standard.

Additionally, the ALJ noted that Plaintiff provided three different explanations as to why she left her last position: (1) when applying for DIB, she reported she stopped due to her conditions, Tr. 158; (2) at the hearing, she testified that she was given the option of being fired or resigning, Tr. 43; and (3) her unemployment records indicated she had been terminated, Tr. 478-82. None of the parties addressed this reason. Therefore, this Court is not required to address it. *See Carmickle*, 533 F.3d at 1161 n.2.

Finally, Defendant argues that the ALJ also rejected Plaintiff's symptom statements because she failed to follow prescribed treatment. ECF No. 19 at 4-5. The ALJ did discuss Plaintiff's failure to follow through with her physical therapy; however, this was in relation to Dr. Roesler's records and never actually found this as a separate reason to reject Plaintiff's statements. Tr. 25. As such, Defendant's

assertion is a *post hoc* rationalization, which will not be considered by this Court. *See Orn*, 495 F.3d at 630 (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

While not every reason provided by the ALJ met the specific, clear and convincing standard, she provided enough reasons that meet the heightened standard to support her determination. *See Carmickle,* 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination"). Therefore, the Court will not disturb the ALJ's treatment of Plaintiff's symptom statements.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED March 5, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION - 15